## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

**BILLY N. CULBERTSON**                                                    **PLAINTIFF**
**ADC #076385**

**V.**                          **NO. 2:19-cv-27-DPM-ERE**

**BILL COWELL, Medical Director, Grimes Unit;**
**SHELIA ARMSTRONG, Medical Grievance Officer;**
**ARIC SIMMONS, APN; and**
**BRENDA BRIDGEMAN, Director of Nursing**            **DEFENDANTS**

### RECOMMENDED DISPOSITION

I.    **Procedure for Filing Objections:**

This Recommendation for dismissal has been sent to United States District
Chief Judge D.P. Marshall Jr. Any party may file written objections to all or part of
this Recommendation.  Any objections filed must: (1) specifically explain the factual
and/or legal basis for the objection; and (2) be received by the Clerk of this Court
within fourteen (14) days of the date of this Recommendation. If no objections are
filed, Judge Marshall may adopt this Recommendation without independently
reviewing all of the evidence in the record. By not objecting, the parties may waive
the right to appeal questions of fact.

II.    **Background:**

Plaintiff Billy N. Culbertson, an Arkansas Department of Correction (ADC)
inmate, filed this lawsuit *pro se* under 42 U.S.C. § 1983. *Doc. 2.* In his original and

amended complaints, Mr. Culbertson claims that he suffers from migraine headaches and that medical providers at the ADC Grimes Unit failed to provide him with adequate medical treatment for several years.

The Court previously limited the claims that Mr. Culbertson may pursue in this lawsuit.[1]  The remaining defendants in the case are: (1) Bill Cowell, the Grimes Unit Medical Director; (2) Shelia Armstrong, a Grimes Unit Medical Grievance Officer; (3) Aric Simmons, an Advanced Practical Registered Nurse, who provides direct patient care for Grimes Unit inmates; and (4) Brenda Bridgeman, the Grimes Unit Director of Nursing. The Court allowed Mr. Culbertson to proceed on the following claims: (1) in September 2016, Mr. Simmons examined him, but failed to provide him any pain relief; (2) in September 2016, Ms. Bridgeman told him that he would be seen by a doctor, but he was not seen; (3) on October 18, 2016, Mr. Cowell failed to send his MRI results with him to his neurology appointment with Dr. Ahmed; (4) in January 2018, Mr. Simmons and Ms. Bridgeman returned him to the general population without having him examined by a physician; (5) in August 2018, Mr. Simmons and Ms. Bridgeman failed to respond to his requests for a wheelchair, when he was unable to walk; (6) following his June 23, 2018 neurology appointment,

---

[1] On September 12, 2019, the Court dismissed as time-barred and with prejudice a portion of Mr. Culbertson's claims against Defendant Kelly Pfitzner. *Docs. 36, 39*. On January 7, 2020, the Court dismissed without prejudice Mr. Culbertson's unexhausted claims and dismissed Defendants Pfitzner and Canard from the lawsuit. *Docs. 50, 56*.

Ms. Bridgeman and Mr. Simmons failed to provide him a wheelchair or the follow-up care that he was supposed to receive; (7) in October 2018, Mr. Simmons failed to provide him an extra pillow that he was to have ordered for Mr. Culbertson; (8) in November 2018, Mr. Simmons failed to address his medical needs related to vision loss; and (9) Mr. Cowell and Ms. Armstrong failed to respond to his grievances. *Docs. 55, 56.*

On April 21, 2021, Mr. Culbertson moved for summary judgment. *Doc. 68.* Defendants previously responded to Mr. Culbertson's motion and have now filed a motion for summary judgment, statement of undisputed facts, and brief in support. *Docs. 71, 72, 80, 81, 82.* Mr. Culbertson has responded to Defendants' motion. *Docs. 84, 85.* Thus, the issues are fully briefed and ripe for the Court's review.

III. **<u>Discussion</u>:**

A. **Standard**

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must

present specific facts demonstrating that there is a material dispute for trial. See Fed. R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

A party is entitled to summary judgment if - but only if - the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

### B.     Factual Background[2]

In January 2016, medical staff at the Batesville Neurology Clinic examined Mr. Culbertson. *Doc. 82-1 at 1-3.* He was diagnosed with: (1) chronic daily headaches; and (2) a pineal gland cyst (a benign cyst located toward the back of his brain). *Id. at 3.* The neurologist prescribed Mr. Culbertson verapamil. *Id.*

On July 24, 2016, Mr. Culbertson submitted a sick-call request complaining that his medication regimen required adjustment because the verapamil was causing chest pain. *Id. at 4.* On July 26, the sick-call nurse examined Mr. Culbertson and noted "[c]hronic care to evaluate if change is necessary." *Id. at 5.*

On August 2, Mr. Simmons examined Mr. Culbertson. *Id. at 6.* Based on Mr. Culbertson's complaints, Mr. Simmons adjusted his dosage of verapamil. *Id.*

On September 23, 2016, Mr. Culbertson underwent an MRI of his brain. *Id. at 7-8.* The attending physician noted "no enhancement'' and "no interval change"

---

[2] The facts are taken from Mr. Culbertson's medical records. *Doc. 82-1.*

from the previous study of Mr. Culbertson's pineal gland cyst. *Id. at 7.* On October 18, 2016, Dr. Ahmed, a neurologist at the University of Arkansas School for Medical Sciences and not a party to this lawsuit, examined Mr. Culbertson. *Id. at 11-18.* Dr. Ahmed noted that Mr. Culbertson's MRI results were not available for review at that appointment. *Id. at 13.* Dr. Ahmed noted that ADC officials could "send films" and have the patient return "if needed." *Id. at 16.*

On November 8, 2016, Dr. Ahmed reviewed Mr. Culbertson's MRI results. *Id. at 19.* He recommended that Mr. Culbertson undergo an MRI in one year. *Id.*

On November 15, 2016, Mr. Culbertson submitted a sick-call request complaining of headaches, vomiting, and vision problems and requesting medication refills. *Id. at 21.* The following day, Dr. Reichard (not a party to this lawsuit) examined Mr. Culbertson and formulated a plan of care. *Id. at 22-23.*

On October 31, 2017, Mr. Culbertson underwent another MRI. *Id. at 25-29.* Notes indicate that Mr. Culbertson's pineal gland was slightly larger. *Id. at 28.* At that time, a neurological consult was recommended. *Id.*

On November 21, 2017, Mr. Simmons examined Mr. Culbertson based on his complaints of headaches, vertigo, and loss of balance. *Id. at 31.* At that time, Mr. Simmons: (1) issued Mr. Culbertson a shower chair; (2) added lamotrigine to treat Mr. Culbertson's headaches; (3) referred Mr. Culbertson to ophthalmology; and (4)

requested that Mr. Culbertson's neurosurgery appointment be expedited, if possible. *Id.*

On December 6, 2017, Mr. Simmons examined Mr. Culbertson based on the same complaints. *Id. at 33.* He increased Mr. Culbertson's lamotrigine dosage and added prescriptions for meclizine HCL and ondansetron (Zofran) for vertigo and nausea. *Id.*

On December 12, 2017, medical staff at the Batesville Neurology clinic examined Mr. Culbertson. *Id. at 34-37.* Dr. Gonzalez (not a party to this lawsuit) recommended gabapentin to treat Mr. Culbertson's headaches. *Id. at 34.* He noted that Mr. Culbertson's pineal gland cyst was stable, but he recommended that it be evaluated by a neurosurgeon. *Id.*

The next day, Mr. Simmons: (1) prescribed Mr. Culbertson gabapentin; (2) issued Mr. Culbertson a rolling walker; and (3) made the decision to confer with a neurosurgeon. *Id. at 38.*

On December 22, Mr. Culbertson underwent a CT of the brain. *Id.* at 39-43. The results were "comparable to the previous MRI study" that Mr. Culbertson underwent in October 2017. *Id. at 39.*

In January 2018, after Defendant Bridgeman had observed Mr. Culbertson's daily life activities when he was housed "on the ward," she discharged him to the

general population with a helmet restriction and his previously issued rolling walker. *Id. at 44-46.*

On February 27, 2018, Dr. Ahmed examined Mr. Culbertson. *Id. at 47-53.* He diagnosed Mr. Culbertson with a stable, benign pineal cyst, tension headaches, and balance issues. *Id. at 47.* Dr. Ahmed recommended a follow-up MRI in one year and a referral to neurology for headaches and imbalance. *Id.* Dr. Ahmed specifically noted that "no neurosurgical intervention [was] recommended." *Id. at 53.*

On March 6, 2018, Mr. Simmons prescribed Mr. Culbertson an afternoon/evening dose of lamotrigine to provide additional relief from headaches. *Id. at 55.*

On June 25, 2018, Dr. Shipley, a neurologist at the Batesville Neurology Clinic, examined Mr. Culbertson. *Id. at 56-59.* He recommended that Mr. Culbertson go to the pain clinic to receive occipital nerve blocks. *Id. at 56.* The next day, Mr. Simmons entered a consultation request for Mr. Culbertson. *Id. at 110-11.*

On August 1, Mr. Culbertson submitted a sick-call request complaining that his brain was "messing up" and causing him to tell lies. *Id. at 60.*

The same day, Ms. Armstrong and Ms. Bridgeman encountered Mr. Culbertson, who requested a wheelchair. *Id. at 60-61.* In response, Ms. Armstrong and Ms. Bridgeman advised Mr. Culbertson to make his request through the sick-call process. *Id.*

7

The next day, Ms. Armstrong observed Mr. Culbertson, without his helmet, sitting on the seat of his rolling walker, pushing himself backwards. *Id. at 63.* Medical staff had instructed Mr. Culbertson for safety reasons not to transport himself while sitting in the seat, which was available for resting purposes only, and to wear a helmet at all times. *Id. at 63-64.*

On August 8, after Mr. Simmons had received multiple reports of Mr. Culbertson's noncompliance with the foregoing safety instructions, he determined that Mr. Culbertson should be placed on "the ward" to assess his condition. *Id. at 70-71.*

On August 14, after Mr. Simmons continued to observe Mr. Culbertson's continued refusal to comply with the instructions that he had been given, he discontinued Mr. Culbertson's walker. *Id. at 86.* At that time, Mr. Simmons issued Mr. Culbertson a wheelchair and told him that he would attempt to obtain a larger helmet for him. *Id.*

On September 11, Mr. Culbertson underwent a CT of the head. *Id. at 90-91.* The radiologist's impression of the pineal cyst was "unchanged." *Id. at 90.*

On October 17, medical staff at the pain clinic assessed Mr. Culbertson for occipital nerve block injections. *Id. at 92-96.* Mr. Culbertson was scheduled to receive the neve blocks the following month. *Id. at 92.*

The following day, Mr. Culbertson requested that Mr. Simmons provide him a particular pillow. *Id. at 97.* Mr. Simmons explained that he would review the recommendations from the pain clinic. *Id.*

On November 7, Mr. Simmons saw Mr. Culbertson to review his CT results. *Id. at 99.*

On November 13, Mr. Culbertson underwent occipital block treatment. *Id.* at 100-103. On the same day, the treating physician recommended that Mr. Culbertson receive an extra pillow, and Mr. Simmons issued Mr. Culbertson an extra pillow. *Id.* at 106.

On November 27, Mr. Simmons made a consultation request for Mr. Culbertson to receive follow-up injections at the pain clinic. *Id. at 108.*

## C.    Deliberate-Indifference Claim

Deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain and violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (omitting quotations and citation). An inadvertent or negligent failure to provide adequate medical care does not amount to deliberate indifference. Negligence, even gross negligence, is not deemed "an unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105. Likewise, disagreement with treatment decisions cannot support a deliberate indifference claim. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006); see also *Dulany v.*

*Carnahan*, 132 F.3d 1234, 1239-40 (8th Cir. 1997) (where medical records show that treatment was provided; and physician affidavits state that the care was adequate, an inmate's belief that she did not receive adequate care is insufficient to create disputed material fact). Stated another way, the defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)); see also *Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015) (to prevail on Eighth Amendment Claim, inmate must show that defendants' mental state was akin to criminal recklessness). Mr. Culbertson "must clear a substantial evidentiary threshold" to show that the defendants acted with deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019).

In support of their motion for summary judgment, the defendants present the declarations of Defendant Simmons, an Advance Practice Registered Nurse, and Gary Kerstein, M.D. *Docs. 82-2, 82-3.* Mr. Simmons states that Mr. Culbertson's medical conditions were treated "in a medically appropriate manner," and "[a]t no point was he denied or delayed any necessary medical care by [the defendants]." *Doc. 82-2 at 8.*

Dr. Kerstein states that Mr. Culbertson "had continual, appropriate access to healthcare" and that defendants "provided him with appropriate treatment." *Doc. 82-*

*3 at 4.* Dr. Kerstein explains that "Mr. Culbertson was regularly followed by a neurologist and a neurosurgeon for his benign pineal cyst and complaints for headaches. Mr. Culbertson was monitored very closely and thoroughly." *Doc. 82-3 at 1.* Dr. Kerstein also states that "[i]t is [his] opinion that Dr. Reichard, Mr. Simmons, and the outside providers worked diligently to treat Mr. Culbertson['s] subjective complaints relating to headaches" and that he did "not fault Mr. Simmons for bending over backwards to accommodate this inmate patient." *Id. at 2, 3.* He concludes that "[t]here is certainly no evidence of any level of indifference toward [Mr. Culbertson's] medical needs." *Id.*

At the summary judgment stage, Mr. Culbertson's unsupported assertions that the Defendants were deliberately indifferent are insufficient. "'When the movant makes a *prima facie* showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne*, 11 S.W.3d 531, 539 (2000)).

Here, Mr. Culbertson has failed to come forward with any evidence from which a factfinder could conclude that the defendants' treatment decisions were even arguably criminally reckless. Furthermore, he has failed to come forward with any evidence that any alleged delay in treatment actually harmed his prognosis. See

*Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006) (an inmate claiming that his medical care was inadequate because of a delay in treatment must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in treatment). Finally, Mr. Culbertson has not come forward with any evidence contradicting Mr. Simmons' or Dr. Kerstein's testimony that he has received adequate medical care.

Based on a review of Mr. Culbertson's medical records, during the time period in question, medical staff: (1) consistently and promptly examined him; (2) routinely referred him and transported him to outside specialists for examinations and treatment; and (3) consistently provided him prescription medication, including pain medication. Such conduct could hardly be characterized as deliberate indifference. Although Mr. Culbertson may disagree with the treatment decisions made by the medical staff, a disagreement in treatment is not evidence of a constitutional deprivation. Accordingly, the defendants are entitled to judgment as a matter of law.

### D.    Interference with the Grievance Procedure

The law is well-settled that an inmate does not have a constitutional right to an inmate grievance procedure. *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Therefore, a prison official's failure to properly process or respond to a grievance, standing alone, is not

actionable under § 1983. Accordingly, Mr. Culbertson's claims that Mr. Cowell and Ms. Armstrong failed to respond to his grievances also fails as a matter of law.

**IV.   Conclusion:**

IT IS THEREFORE RECOMMENDED THAT:

1.     Defendants' motion for summary judgment *(Doc. 80)* be GRANTED, and judgment entered in their favor on Mr. Culbertson's remaining claims, all of which should be DISMISSED, with prejudice; and

2.     Mr. Culbertson's motion for summary judgment *(Doc. 68)* be DENIED.

DATED this 9th day of September, 2021.

_____
UNITED STATES MAGISTRATE JUDGE